U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2026 FEB 26 PM 3: 34
CLERK
BY [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

HEYLIN JULESMY CABRERA-LOPEZ,

Petitioner,

v.

PATRICIA HYDE, in her official capacity as Field Director, U.S. Immigration and Customs Enforcement, Boston Field Office; TODD M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of U.S. Department of Homeland Security; DONALD J. TRUMP, in his official capacity as President of the United States; PAMELA BONDI, in her official capacity as U.S. Attorney General; CAROLYN RILEY, in her official capacity as Superintendent, Chittenden Regional Correctional Facility; DAVID W. JOHNSTON, in his official capacity as Vermont Sub-Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations; and PETE R. FLORES, in his official capacity as Acting Commissioner for U.S. Customs and Border Protections,

Respondents.

Case No. 2:26-cv-00017-cr

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**
(Doc. 1)

On January 26, 2026, Heylin Julesmy Cabrera-Lopez ("Petitioner") filed a petition for writ of habeas corpus (the "Petition"), pursuant to 28 U.S.C. § 2241, in the District of Massachusetts. Two days later, on January 28, 2026, Petitioner's case was transferred to

this court. Named as respondents are Patricia Hyde, in her official capacity as Acting Boston Field Office Director of U.S. Immigration and Customs Enforcement ("ICE"); Todd M. Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"); Donald J. Trump, in his official capacity as President of the United States; Pamela Bondi, in her official capacity as United States Attorney General; David W. Johnston, in his official capacity as Vermont Sub-Office Director of ICE Enforcement and Removal Operations; Pete R. Flores, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection ("CBP") (collectively, "Federal Respondents"); as well as Carolyn Riley, in her official capacity as Superintendent of the Chittenden Regional Correctional Facility.

On January 30, 2026, Petitioner moved for a temporary restraining order ("TRO") to prevent her removal from the District of Vermont pending her habeas proceedings. (Doc. 11.) On February 3, 2026, Federal Respondents opposed the Petition and the motion for a TRO. (Doc. 16.) On the same day, the court held a hearing on the motion for a TRO and granted it. (Doc. 17.) At the hearing, the court noted that it lacked sufficient information to rule on the Petition and requested supplemental briefing. Petitioner filed a supplemental brief on February 11, 2026, (Doc. 19), and Federal Respondents filed a supplemental brief on February 17, 2026. (Doc. 23.)

Petitioner is represented by Andrew K. Pelcher, Esq., and Robin N. Nice, Esq. Federal Respondents are represented by Assistant United States Attorney Lauren Almquist Lively. Carolyn Riley is represented by Debbie H. Stevens, Esq.

## I. Factual and Procedural Background.

Petitioner is a citizen of Nicaragua who entered the United States on or about July 3, 2022. Petitioner entered the United States without inspection through Eagle Pass, Texas. Petitioner was subsequently taken into custody and granted humanitarian parole

on or about July 25, 2022. Petitioner's humanitarian parole was valid for one year.[1] *See* Doc. 19-2.

On or about July 25, 2022, Petitioner was given a notice of custody determination, stating that "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act" ("INA"), otherwise known as 8 U.S.C. § 1226, "you will be: . . . [r]eleased . . . [u]nder other conditions." (Doc. 19-3 at 1.) Petitioner was also given a notice to appear ("NTA"), dated July 25, 2022, charging her with removability. On the NTA, DHS did not check any box to indicate whether Petitioner was "an arriving alien[,]" or "an alien present in the United States who has not been admitted or paroled[,]" or whether Petitioner "ha[d] been admitted to the United States, but [was] removable[.]" (Doc. 16-1 at 1.)

Thereafter, Petitioner resided and worked in South Portland, Maine. On September 25, 2024, more than two years after entering the United States, Petitioner submitted an application for asylum at the Chelmsford, Maine Immigration Court because she "was given incorrect advice that she could not apply for asylum until she had her first immigration court hearing[]" and was "not aware of the one-year filing deadline and filed as soon as possible under the circumstances." (Doc. 19 at 3, ¶ 3.) "Around the end of 2024," Petitioner was arrested for and pled guilty to driving without a license and driving under the influence of alcohol. (Doc. 19-1 at 2, ¶ 9.) On February 4, 2025, Petitioner was again charged with driving without a license.[2]

On January 20, 2026, ICE officers obtained a warrant for Petitioner's arrest, which was issued "pursuant to sections 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations[]" and based on probable cause that Petitioner "is removable from

---

[1] Federal Respondents claim that Petitioner was granted humanitarian parole "for two months—with her parole expressly expiring on September 4, 2022." (Doc. 23 at 2.) However, the preliminary parole authorization granted Petitioner parole "por un año[,]" meaning for one year. (Doc. 19-2 at 1); *see id.* ("Your parole authorization is valid for one year from the date shown on this notice [, 07/25/2022,] and automatically terminates upon your departure or removal from the United States, or at the end of the one year period[.]") (translated).

[2] The parties do not clarify whether Petitioner was convicted of this charge.

the United States." (Doc. 19-6 at 1.) On the same day the warrant was issued, ICE officers arrested Petitioner in South Portland, Maine, as she was driving to work. At some point after her arrest, Petitioner was incarcerated at a correctional facility in Massachusetts and subsequently transferred to the Chittenden Regional Correctional Facility in South Burlington, Vermont.

On February 12, 2026, Petitioner requested a custody redetermination in immigration court pursuant to 8 C.F.R. § 1236. The immigration judge ("IJ") denied Petitioner's request as follows:

> Pursuant to [8 U.S.C. § 1225(b)(2)(A)], the [c]ourt lacks jurisdiction to consider [Petitioner]'s request for redetermination of custody status because [Petitioner] is present in the United States without admission. *Matter of Yajure*[]*Hurtado*, 29 I&N Dec. 216 (BIA 2025). The [c]ourt is cognizant of the [d]istrict [c]ourt order in *Guerrero-Orellana v. Moniz*; however, as per the Supreme Court decision in *Steffel v. Thompson*, 415 U.S. 452, 471 (1974) . . . a declaratory judgment, "though it may be persuausive, . . . is not ultimately coercive." Further, the [] [d]istrict [c]ourt in *Guerrero-Orellana v. Moniz* did not vacate or stay the Board [of Immigration Appeal]'s decision in [] *Matter of Yajure*[]*Hurtado*, 29 I&N Dec. 216 (BIA 2025), or enjoin the [i]mmigration [c]ourts' reliance on that decision. Accordingly, the [c]ourt finds that, at the present time, it remains obligated to follow the precedential decision of the Board of Immigration Appeals.

(Doc. 21-2 at 1) (alteration adopted) (emphasis supplied).

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention[.]" *Kapoor v. DeMarco*, 132 F.4th 595, 610 (2d Cir. 2025) (quoting *INS v. St. Cyr*, 533 U.S. 289, 301 (2001)) (internal quotation marks omitted).

**B. Whether Petitioner Is Comparable to an Individual Detained Without a Warrant.**

Petitioner contends that she is "entitled to an official and timely custody determination, which would then allow [her] to request a custody redetermination as provided by law." (Doc. 19 at 6.) To the extent, Petitioner's argument is based on statutes and regulations governing warrantless arrests of noncitizens, that argument is without merit.

Under 8 U.S.C. § 1357(a)(2), a noncitizen arrested without a warrant "shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States[.]" For "[d]isposition of cases of aliens arrested without warrant[,]" pursuant to 8 C.F.R. 287.3(d), "a determination will be made within 48 hours of the arrest, . . . whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued." Neither 8 U.S.C. § 1357(a)(2)'s nor 8 C.F.R. 287.3(d)'s protections apply to Petitioner, who was arrested pursuant to a warrant.

**C. Whether Petitioner Is Detained Under 8 U.S.C. § 1225(b) or § 1226(a).**

8 U.S.C. § 1225(a) provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) applies to noncitizens "who [are] arriving in the United States" or otherwise "designated by the Attorney General" and "determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." 8 U.S.C. § 1225(b)(1)(A)(i), (b)(1)(A)(iii)(I); *Jennings*, 583 U.S. at 287 (citation omitted). An "[a]rriving alien" includes "an applicant for admission coming or attempting to come into the United States at a port-of-entry[.]" 8 C.F.R. § 1.2. Section 1225(b)(2) applies to

noncitizens who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A).

Applicants covered by § 1225(b)(1) are removed "without further hearing or review" pursuant to an expedited removal process unless the person "indicates either an intention to apply for asylum . . . or a fear of persecution[,]" in which case that person is referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). Applicants covered by § 1225(b)(2) are placed in full removal proceedings under 8 U.S.C. § 1229a. The Supreme Court has interpreted both § 1225(b)(1) and (b)(2) as "mandat[ing] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297.

Whereas Section 1225(b) "authorizes the [g]overnment to detain certain aliens *seeking admission* into the country[,]" Section 1226 "authorizes the [g]overnment to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis supplied). Section 1226(a) establishes a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General[.]" 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may: (1) "continue to detain the arrested alien"; (2) "release the alien on . . . bond"; or (3) "release the alien on . . . conditional parole[.]" *Id.* at §§ 1226(a)(1)-(2). "Critically, under 8 C.F.R. § 1236.1(d)(1), a noncitizen detained under § 1226 may appeal an 'initial custody determination,' including the setting of bond, to an immigration judge." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025). An exception exists for noncitizens "who meet certain criminal and inadmissibility criteria[,]" not implicated in this case, who are subject to mandatory detention under § 1226(c). *Martinez v. Hyde*, 792 F. Supp. 3d 211, 221 (D. Mass. 2025); *see also* 8 U.S.C. § 1226(c).

As a noncitizen "present in the United States who has not been admitted[,]" Petitioner is an "applicant for admission[]" under 8 U.S.C. § 1225(a)(1). The question before the court is whether Petitioner is also an "arriving alien" under § 1225(b)(1) or "seeking admission" under § 1225(b)(2) such that she is subject to mandatory detention.

**1. Whether Petitioner Is an "Arriving Alien" Under § 1225(b)(1).**

Federal Respondents argue that Petitioner "remains subject to mandatory detention under Section 1225 as an 'arriving alien' in light of her parole expiration." (Doc. 23 at 6.) Petitioner counters that "this [c]ourt has held that a parolee is not an 'arriving alien' when their parole status ends or is revoked." (Doc. 19 at 9) (emphasis omitted).

8 U.S.C. § 1182(d)(5)(A) provides that parole does not constitute admission of the noncitizen and that, when parole expires, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *See also* 8 C.F.R. § 212.5(e)(2)(i) (upon expiration of parole, the noncitizen "shall be restored to the status that he or she had at the time of parole"). The federal regulations define an "[a]rriving alien" to include "an applicant for admission coming or attempting to come into the United States at a port-of-entry" and state that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the [INA], and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2.

In *Ibragimov v. Gonzales*, the Second Circuit considered whether a noncitizen who had overstayed his visa was properly treated as an "arriving alien" and "applicant for admission" subject to removal. 476 F.3d 125, 132-33 (2d Cir. 2007). The petitioner had entered the United States on a valid visa in September 1992, and, after the visa expired in March 1993, he remained in the country, married a United States citizen, and filed an application to adjust his immigration status. While this application was "pending before the Immigration and Naturalization Service ('INS'), [the p]etitioner applied for 'advance parole,' *i.e.*, permission to leave and return to the United States with the government's prior authorization pending resolution of his immigration status." *Id.* at 129. The INS granted him advance parole in July 1996, and he returned to the United States in July 1998. In October 1999, the INS denied his application for status adjustment, revoked his parole, and issued him an NTA for removal proceedings. The petitioner sought to terminate his removal proceedings, arguing that, because he "had been paroled back into

the country and was therefore no longer 'seeking inspection to the United States' but, rather, had 'already arrived[,]'" he was not an "arriving alien." *Id.* at 136 (internal quotation marks omitted).

Relying on the INA's regulations in its pre-*Loper Bright* decision, the Second Circuit rejected the petitioner's interpretation, noting his argument "ignores the regulation's command that 'an arriving alien *remains such even if paroled* pursuant to [INA] section 212(d)(5).'" *Id.* at 136 (emphasis and alteration in original) (quoting 8 C.F.R. § 1.1(q) (2007)).[3] The Second Circuit observed that the petitioner's contention was "further undermined by the terms of 8 C.F.R. § 212.5(e)(2)(i), which provides that upon termination of an alien's parole, the alien 'shall be restored to the status that he or she had *at the time of parole*.'" *Id.* (emphasis in original) (quoting 8 C.F.R. § 212.5(e)(2)(i)). "[T]he 'time of parole' occurs when the alien is actually paroled into the country by immigration officials at a port-of-entry." *Id.* As a result, the Second Circuit concluded that the petitioner's "status reverted to that which he held at the time he was paroled into the United States in July 1998—namely, that of an 'arriving alien' seeking admission at our borders." *Ibragimov*, 476 F.3d at 137.

In so deciding, the Second Circuit relied on *Chevron* deference:

> Under *Chevron*, if a statute is clear on its face, we "must give effect to the unambiguously expressed intent of Congress." *Fulani v. FCC*, 49 F.3d 904, 910 (2d Cir. 1995) (quoting *Chevron* [*U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*], 467 U.S. [837,] 842–43 [(1984)]). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (quoting *Chevron*, 467 U.S. at 843 . . . ); *see also Nolan v. Holmes*, 334 F.3d 189, 198 (2d Cir. 2003) (applying *Chevron* to review of INS regulation).
>
> Applying the first step of Chevron analysis, we conclude . . . that the parole statute is silent on the question of what status should be accorded to advance parolees who have previously overstayed their visas. Applying the second step of our analysis, we conclude that the relevant INS regulations are "reasonable" and not "arbitrary, capricious, or manifestly contrary" to

---

[3] 8 C.F.R. § 1.1(q) (2007) and 8 C.F.R. § 1.2 (2025) provide the same definition for "arriving alien."

> the intent of Congress, and therefore are entitled to the deference of the courts, *Chevron*, 467 U.S. 837 at 845 . . . . In particular, the interpretation embraced by the INS's regulations—*i.e.*, that advance parolees remain arriving aliens even after they have re-entered the United States—fully accords with the statute's general command that parole does not afford an alien legal admission to the country. *See* 8 U.S.C. § 1182(d)(5)(A).

*Id.* at 137 n.17. The Second Circuit therefore held that the petitioner was appropriately subject to removal and "the government did not err in treating [him] as an arriving alien and an applicant for admission[.]" *Id.* at 128.

Recently, in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overruled *Chevron*, finding that Section 706 of the Administrative Procedure Act ("APA") "makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference. Under the APA, it thus 'remains the responsibility of the court to decide whether the law means what the agency says.'" *Id.* at 392 (emphasis in original) (citation omitted). The Supreme Court held that courts must "exercise independent judgment in construing statutes administered by agencies." *Id.* at 406.

After *Loper Bright* overruled *Chevron*, this court, in *Ruiz v. Trump*, 2026 WL 323254 (D. Vt. Feb. 6, 2026), rejected *Ibragimov*'s proposition that parolees who have resided in the United States for years are perpetually considered "arriving aliens" due to their status as parolees. Other district courts in the Second Circuit have reached a similar conclusion, finding that, as a matter of statutory interpretation, a noncitizen who has been residing in the United States after the expiration or termination of parole does not have his or her status revert to one of an "arriving alien."[4]

---

[4] *See, e.g.*, *Covelli-Chaparro v. Bondi*, --- F. Supp. 3d ----, 2026 WL 118842, at *6 (E.D.N.Y. Jan. 15, 2026) (finding that petitioner, who was paroled "into the interior of the United States on or around May 1, 2022" and "resided in this country since then[,]" was not "subject to mandatory detention pending expedited removal as an 'arriving alien' under Section 1225(b)(1)[]"); *Rodriguez-Acurio v. Almodovar*, --- F. Supp. 3d ----, 2025 WL 3314420, at *21 (E.D.N.Y. Nov. 28, 2025) (rejecting *Ibragimov*'s interpretation and finding "it would be illogical to find that [petitioner] is still in the process of 'arriving' in the United States when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole"); *Qasemi v. Francis*, 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025)

After *Loper Bright*, courts must "use every tool at their disposal to determine the best reading of the statute[.]" 603 U.S. at 400. "A statute generally 'should be enforced according to its plain and unambiguous meaning.'" *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 (2d Cir. 2015) (citation omitted).

In *Coalition for Humane Immigrant Rights v. Noem* ("*Coalition for HIR*"), 805 F. Supp. 3d 48, 91 (D.D.C. 2025), *appeal docketed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025), the District Court for the District of Columbia addressed whether parolees were "arriving aliens" subject to expedited removal under § 1225(b)(1) following expiration of their parole. The plaintiffs argued that the present-progressive tense of § 1225(b)(1) "signals an action that is temporary but currently occurring" and, thus, "[o]nce inspected at the border and paroled into the country, . . . a noncitizen is no longer in the process of 'arriving.'" *Id.* at 89 (internal quotation marks omitted). The *Coalition for HIR* court found that the "[p]laintiffs' interpretation is the best reading of the statute, despite DHS's longstanding regulation to the contrary." *Id.* at 90 (citing *Loper Bright*, 603 U.S. at 394). In so deciding, the court explained:

> "Arrive" means "to reach a destination" or "to make an appearance." Read according to its plain meaning, a noncitizen "arriving" in the United States would be one who is in the process of reaching his or her destination (the United States) and making an appearance here. It would not naturally be read to refer to someone who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States (beyond their original destination) for an indefinite period of time.

*Id.* (internal citations omitted).

---

("Applying the plain meaning of 'arriving in the United States' here, there can be no doubt that upon his parole into the interior of the country, [petitioner] had arrived in the United States and was no longer a noncitizen arriving in the United States. It would try any plain understanding of the term arrival to classify an individual like [petitioner] who has lived and worked in the United States for over a year prior to his re-detention as an arriving alien."); *see also Francois v. Noem*, 2026 WL 27565, at *3 (E.D. Pa. Jan. 5, 2026) (holding that "noncitizens who were paroled under § 1182(d)(5) are not subject to mandatory detention if they have been residing within the country for years[]"); *Rodriguez v. Rokosky*, 2025 WL 3485628, at *2 (D.N.J. Dec. 3, 2025) ("[T]o the extent Respondents imply that revocation of parole somehow returns Petitioner to his pre-parole status[,] the statutory text does not support such a reading[.]").

The *Coalition for HIR* court utilized *Ibragimov*'s reasoning to support its conclusion that parolees are not considered "arriving aliens":

> Even worse for [the d]efendants, *Ibragimov* described parole as "a means by which the government allows aliens who have arrived at a port-of-entry to temporarily remain in the United States pending the review and adjudication of their immigration status." 476 F.3d at 134 (emphasis added). Under that construction, while a parolee remains "legally unadmitted," they "have arrived"—i.e., their arrival is complete, whereas their admission is not. *Id.* That reading is consistent with the statute's distinction between aliens who have been "admitted" and those who have been "paroled."

*Id.* at 91-92.

This court finds *Coalition for HIR*'s reasoning persuasive and finds that, like the petitioner in *Ibragimov*, "an 'arriving alien' is one who is in the process of reaching the United States[,]" *Rodriguez-Acurio v. Almodovar*, --- F. Supp. 3d ----, 2025 WL 3314420, at *20 (E.D.N.Y. Nov. 28, 2025), not a person like Petitioner who had resided here for several years prior to her detention in January 2026. Even if Petitioner's status reverted back to "that which [s]he held at the time [s]he was paroled into the United States[,]" *Ibragimov*, 476 F.3d at 137, in her NTA, Petitioner was not classified as an "arriving alien." (Doc. 16-1 at 1.) To the contrary, she was detained and released under § 1226. *See* Doc. 19-3 at 1.

For the foregoing reasons, the court finds Petitioner is not subject to mandatory detention pursuant to § 1225(b)(1) because she is not an "arriving alien."

**2. Whether Petitioner Is "Seeking Admission" Under § 1225(b)(2).**

Section 1225(b)(2) provides for mandatory detention of an "applicant for admission," who is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Federal Respondents assert that "Petitioner is properly subject to detention pursuant to 8 U.S.C. § 1225(b)" but do not argue that Petitioner was seeking admission. (Doc. 23 at 1.) As several courts in the Second Circuit have recently found, "'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering[.]" *Hyppolite v. Noem*, --- F. Supp. 3d ----, 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6,

2025).[5] This definition applies even if a noncitizen was previously granted parole which has since terminated or expired. *See Hernandez Lazo v. Noem*, --- F. Supp. 3d ----, 2026 WL 303430, at *11 (E.D.N.Y. Feb. 4, 2026) ("[Parolee] cannot be 'seeking admission' because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country."); *Rodriguez-Acurio*, 2025 WL 3314420, at *22 ("Although [parolee] is an applicant for admission, she clearly is not presenting herself at the border and was not recently apprehended just after entering, and thereby is not 'seeking admission' under Section 1225(b)(2).").

In this case, at the time of her detention, Petitioner was not presenting herself at the border and was not apprehended just after entering. Instead, she had been residing in the United States for several years. *See Munoz Caraguay v. Larocco*, --- F. Supp. 3d ----, 2026 WL 294842, at *2 (E.D.N.Y. Feb. 4, 2026) ("[Parolee] is not 'seeking admission' because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him on February 1, 2026, [parolee] had been living in the interior of the United States . . . since he was paroled into the country under 8 U.S.C. § 1182(d)(5)(A) on or around December 22, 2022[.]").

For the reasons stated above, the court finds Petitioner is not subject to mandatory detention pursuant to § 1225(b)(2) because she was not "seeking admission" when she was apprehended.

**3. Whether Petitioner Is Detained Under § 1226(a).**

Because Petitioner is not subject to mandatory detention under § 1225(a), her detention is governed by § 1226(a). *See Rodriguez-Acurio*, 2025 WL 3314420, at *24

---

[5] *See also Sarmiento Guerrero v. Noem*, --- F. Supp. ----, 2025 WL 3214787, at *4 (E.D.N.Y. Nov. 18, 2025) ("These provisions suggest that 'seeking admission' 'refers to those who are presenting themselves at the border, or who were recently apprehended just after entering.'") (alteration adopted) (citation omitted); *De Luis v. Trump*, 2025 WL 3763397, at *5 (D. Vt. Dec. 30, 2025) (same); *Yupangui v. Hale*, 2025 WL 3207070, at *4 (D. Vt. Nov. 17, 2025) (same); *Amado Bonilla v. Bondi*, 2026 WL 395423, at *2 (E.D.N.Y. Feb. 12, 2026) (same); *Liu v. Almodovar*, 2025 WL 3458633, at *3 (S.D.N.Y. Dec. 2, 2025) (same); *Quituizaca v. Bondi*, 2025 WL 3264440, at *4 (W.D.N.Y. Nov. 24, 2025) (same).

("Sections 1225 and 1226 are 'mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226.'") (quoting *Lopez Benitez*, 795 F. Supp. 3d at 485).[6] Section 1226(a) applies to noncitizens arrested "[o]n a warrant issued by the Attorney General[.]" 8 U.S.C. § 1226(a).

Petitioner's arrest warrant was issued pursuant to INA § 236, meaning 8 U.S.C. § 1226, *see* Doc. 19-3 at 1, further buttressing the conclusion that she is subject to discretionary detention under § 1226(a). *See Rodriguez-Acurio*, 2025 WL 3314420, at *24 ("Although not dispositive standing alone, [petitioner]'s arrest on a warrant under Section 1226 supports the conclusion that her detention is governed by Section 1226(a)'s discretionary framework."); *Iza By His Next Friend Iza v. Larocco*, 2025 WL 3712274, at *6 (E.D.N.Y. Dec. 22, 2025) (finding "[t]he conclusion that [petitioner]'s detention is governed by Section 1226(a) is supported by the fact that [petitioner] was arrested on a" warrant which "states that the immigration officer who issued the warrant did so 'pursuant to sections 236 and 287 of the [INA]' and part 287 of the title 8 of the Code of Federal Regulations[]").

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Petitioner is thus entitled to a bond hearing but has not received one because the IJ concluded that, in light of *Matter of Yajure Hurtado*, 29 I&N Dec. 216, "the [c]ourt lacks jurisdiction to consider [Petitioner]'s request for

---

[6] *See also Ruiz v. Trump*, 2026 WL 323254, at *6 (D. Vt. Feb. 6, 2026) ("[S]ince [petitioner] is neither 'arriving in the United States' or 'seeking admission,' he is not subjected to mandatory detention pursuant to either Section 1225(b)(1) or 1225(b)(2). [Petitioner]'s detention needs to be evaluated under Section 1226(a)."); *Hernandez Lazo v. Noem*, --- F. Supp. 3d ----, 2026 WL 303430, at *12 (E.D.N.Y. Feb. 4, 2026) ("The termination of [petitioner]'s [temporary protected status] in September 2025 does not change the fact that he was a noncitizen who had been residing in the interior of the United States for decades at the time that ICE detained him, thereby firmly placing his detention under Section 1226(a)."); *Cabrera Martinez v. Marich*, --- F. Supp. 3d ----, 2025 WL 3771228, at *7 (W.D.N.Y. Dec. 31, 2025) (finding that, "because 'any other applicant for admission residing in the United States for more than three years would be detained under [s]ection 1226,' . . . the previously paroled noncitizen also would be held under that section[]").

redetermination of custody status because [Petitioner] is present in the United States without admission." (Doc. 21-2 at 1.) Although Petitioner "requests that this [c]ourt consider granting her immediate release," and some courts have adopted that approach under similar circumstances, *see, e.g.*, *Rodriguez-Acurio*, 2025 WL 3314420, at *32, this court has found a bond hearing is the appropriate remedy for § 1226(a) detainees, rather than immediate release. *See, e.g.*, *Lopez v. Trump*, 2025 WL 3264151, at *6 (D. Vt. Nov. 17, 2025) ("The injury in this case is that [petitioner] has not been provided an opportunity to have a bond hearing in immigration court, as required by § 1226(a). The appropriate relief is therefore to provide her with such a hearing.").

In her Petition, Petitioner asserts a Fifth Amendment due process claim. IJs are generally not authorized to consider constitutional claims. *See Ozturk v. Hyde*, 136 F.4th 382, 400 (2d Cir. 2025) ("[N]either the IJ nor the [Board of Immigration Appeals] has 'jurisdiction to decide constitutional issues.'") (citation omitted). If the court were to order a bond hearing by the IJ, as Petitioner points out, it is by no means guaranteed that a bond hearing will actually take place. *See, e.g.*, *Yeferson G.C. v. Easterwood*, 2026 WL 207266, at *2 (D. Minn. Jan. 21, 2026) (finding that, because the IJ denied petitioner's bond due to a purported lack of jurisdiction, "[t]he IJ's decision . . . deprived [p]etitioner of a determination on the merits of his bond eligibility, and the 'bond redetermination hearing' [p]etitioner purportedly received equates to no bond hearing at all[]"), *report and recommendation adopted,* 2026 WL 209825 (D. Minn. Jan. 27, 2026). For those reasons, the court finds it would be futile to order another bond hearing before an IJ. *See Walizada v. Trump*, 2025 WL 3551972, at *22 (D. Vt. Dec. 11, 2025).

Federal Respondents argue that the court should not hold a bond hearing because, "if the [c]ourt were to order bond, it is not clear which entity would process the payment, and a bond determination by the [c]ourt would require it to remain involved with Petitioner's immigration case if the conditions of her release needed to be altered or she ultimately were ordered removed." (Doc. 23 at 6-7.) However, this court has held bond hearings previously without issues and had issued conditions of release where warranted.

The court GRANTS Petitioner's Petition to the extent it seeks a review of her detention under the Due Process Clause of the Fifth Amendment and § 1226 and will set this matter for an individualized bond hearing at which Federal Respondents shall bear the burden of proving by clear and convincing evidence that Petitioner poses a risk of flight or a danger to the community. *See Alvarez Ortiz v. Freden*, --- F. Supp. 3d ----, 2025 WL 3085032, at *12 (W.D.N.Y. Nov. 4, 2025) ("[C]onstitutional due process requires the government to bear the burden of proving by clear and convincing evidence that the individual is either a danger to the community or a flight risk even at an initial bond hearing under [S]ection 1226(a).").

**CONCLUSION**

For the foregoing reasons, Petitioner's petition for writ of habeas corpus is GRANTED IN PART and DENIED IN PART. (Doc. 1.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of February, 2026.

Christina Reiss, Chief Judge
United States District Court